KING *vs.* STOREY and others.

A judgment creditor, purchasing at sheriff's sale under his judgment, is entitled to have a mortgage upon the property, given by the defendant in execution in embarrassed circumstances, set aside and declared void as against such purchaser, on the ground that it was given to delay and defraud creditors, and without consideration.

---

This cause was brought on for final hearing, and argued upon the pleadings and proofs.

*Mr. Weart,* for complainant.

*Mr. S. Tuttle,* for defendants.

THE CHANCELLOR.

On the 10th day of October, 1865, Arthur V. Conover obtained a judgment in the Supreme Court of this state against the defendant, James A. Storey, for about $2000. Conover assigned the judgment to the complainant, James King, and on the 5th day of July, 1866, the sheriff of Passaic county, by virtue of an execution issued upon it, sold a house

and lot of Storey, in the village of Passaic, to the complainant, and gave him a deed for the premises. They were subject to two undisputed mortgages, for $1500 each, which King has since paid, and also to a mortgage for $1800, to the defendant, Sarah A. Storey, the daughter of James A. Storey. The object of this suit is to have the mortgage to Sarah A. Storey set aside and declared void as against the complainant, on the ground that it was given to delay and defraud creditors, and was without consideration.

The defendants, in their answer, deny that the mortgage was given to delay or defraud creditors, or that it was without consideration, and set up that James A. Storey owed his daughter, Sarah, the amount of it, for services in his family as housekeeper. The answer states, that after Sarah was of age, she had the offer of a situation as teacher in a school at Williamsburgh, at a salary of $500 per annum, and determined to accept the offer, and leave the service of her father; that her mother was a confirmed invalid, and her father requested her to remain and take care of her mother and keep house for him, and agreed to pay her as large a compensation as she could get as a teacher; that, on these terms, she remained in his service for over ten years before the giving of the mortgage to her, and that it was given in fulfillment of that contract, and to pay for these services.

The only question in the cause is, whether this mortgage was given for a debt due from Storey to his daughter, in good faith, or whether it was given to delay and defraud creditors upon this claim, got up as a pretence for that purpose.

The summons in Conover's suit against Storey was issued on the 24th of August, 1865. The mortgage was drawn and executed, and the execution of it acknowledged before a commissioner in the city of New York, although both parties resided in the state of New Jersey. It was dated on the 1st day of August, 1865, but the acknowledgment was taken on the 25th of that month, the day after the issuing of the summons; and as the commissioner is not the person who drew the bond and mortgage, and is the subscribing

witness to both, the inference is very strong that the papers were executed at the date of the acknowledgment, which was the day after the issuing of the summons, and were dated back on a day previous to the commencement of the suit. The giving of the mortgage the day after the suit was commenced, and dating it back, are grave circumstances to excite suspicion.

James A. Storey, in his testimony, states that he went to counsel in New York when he became embarrassed, and asked if he could not transfer this property to his wife, as he had originally intended; that he was told that a transfer to his wife would look suspicious, and that it would look better to give it to any one on whom he could depend; that he told him that his daughter had been housekeeping for him, and he owed her money; that the counsel then told him he would be justified in conveying to his daughter, that his own father had done the same thing with his (the counsel's) sister. The object of Storey, and his only object, beyond question, was to delay and defraud his creditors.

The daughter, in her answer, and in her direct testimony, says that she had an offer of a situation as school teacher, with a yearly salary of $500. But, on cross-examination, she shows that she had no offer at all; that the only fact on which her statement was founded was, that she applied to a woman in Brooklyn, since dead, to inquire if a situation as a teacher could be had. This woman, who was the wife of a school teacher, told her that she thought she had influence to procure her such a situation, and that the salary would be $500; she knew of no situation that was vacant, but supposed she could, by her influence, procure it. This story differs entirely from the sworn statement in her answer, and from her direct testimony. It differs in the substance and pith of the whole matter, and no truthful witness would from it have testified that she had received and declined an offer of a situation as teacher, at $500 per annum, and determined to remain in the service of her father, on the promise of being paid as well. The story, if not inconsistent, would not

be probable. It is not easy anywhere to get a situation for a young woman of twenty-one, with little experience, and no reputation as a teacher, to take charge of a school as a principal, with a salary of $500 per annum. Her only experience had been as a teacher in the colored orphan asylum; she was unable to remember what pay she received there, although it was a yearly salary. Both she and her father say that from the beginning of the service until the delivery of the mortgage nothing was paid her. She kept house, and her clothing was furnished and other expenses were paid for by her father, at least to a considerable extent, and no charge was made and no account kept, and nothing was ever said about settlement or pay, nor was the bargain ever referred to between them. On one occasion, she requested her father to make some *settlement on her*, that she might not be entirely dependent on her brothers; but this, the only conversation ever had on the subject, does not appear to have made any reference to the supposed bargain. No account or calculation was had before the mortgage, and the first notice, so far as appears, that she had of this mortgage having been given, or being intended, was when her father handed it to her upon coming home from New York, where it had been drawn and executed, as stated above. From the whole evidence as to the manner in which she lived with her father and went about to other places, it is impossible to believe that it was understood by her or her father that she was serving on wages, or that this mortgage would ever have been executed, except to ward off the father's creditors.

This mortgage must be set aside, declared void, and canceled, as given to defraud creditors, and without any sufficient consideration.